Case number 16-1219, Edward Carter v. City of Detroit, et al. Argument not to receive 15 minutes of your time. Ms. Patel, you may begin. Good morning, Your Honors. May it please the Court, Seema Patel on behalf of Plaintiff. I'll be reserving three minutes for rebuttal. Your Honors, we're here today because my client was wrongfully imprisoned for 35 years for a crime he did not commit. This was because materially exculpatory fingerprint evidence was kept away from him at the time of the conviction. The fingerprint evidence at issue in this case was located in the bathroom stall where the assault took place. As it happens, the evidence was so probative to his guilt that 35 years later he was exonerated on the basis of this evidence. But it was also that technology had given new tools for evaluating that evidence, right? I think that the technology, the OFIS, is a supplement to what the evidence meant. But if you look at the evidence itself, the fingerprint evidence that was found in the bathroom stall, if you just look at that and evaluate it based on the materiality test under Kyle V. Whitley, that evidence was materially exculpatory at that time. It helps that 35 years later when they were able to run the prints again, they were able to find another suspect who was a convicted rapist, had four rapes that matched the exact same MO. But at the time that the rape happened, the evidence itself was materially exculpatory. And there's two reasons for that. One is the placement of the fingerprints in the bathroom stall. And second is the manner in which the assault took place. Now, the district court, he decided that the evidence was not materially exculpatory because it was fingerprint evidence in a public bathroom. And he said, well, if you have fingerprints in a public bathroom at a public university where anybody could have put their fingerprints on it, that in and of itself makes it not materially exculpatory. Anybody could have come there and put the fingerprints there. You know, you wouldn't even have been able to tell the fingerprints were those of a man necessarily who wasn't supposed to be in a lady's restroom, right? No, I mean there was no gender identification of the fingerprints. But the location was important given the crime. Extremely important. And it's two parts. The first is these weren't just fingerprints that were located in a public bathroom. They were fingerprints located in the handicapped area where the assault took place. Now, the manner in which the assault took place is very important in correlation. Let's say I agree with you on that. I mean, this was what the officers did. And the officer's duty is not to turn over evidence to defense. The officer's duty is to turn it over to prosecutors. That's correct. Where's the evidence? But there's no evidence, as I understand it, that they didn't do that. I have the best evidence. My client has testified saying that all throughout his criminal proceedings, the fingerprint evidence was never mentioned. There's no mention of it in the... One, your client's not privy to every conversation his lawyers have with prosecutors. But more importantly, your client doesn't have any personal knowledge of the exchange between the policeman and the prosecutor. So, I mean, that's not admissible evidence. I mean, you know, it's just... Did you depose the police officers? Did you depose the prosecutor? We did not get a chance to depose the police officers or the prosecutor. When you say you didn't have a chance, you did. Why did you take no deaths? The posture of the case was difficult because I think that... Were they not there? Were the officers either not alive or not... No, the officers were there. I think the trial counsel was in the process of getting depositions set up and scheduling them. In the meantime, a motion for summary judgment was filed and a response was filed, and we were still trying to get depositions scheduled. Did you file a Rule 56D motion and say, don't rule on the summary judgment yet because we need these depositions? We didn't file it at that time. What happened then, Your Honor, is the city of Detroit filed for bankruptcy, so the case was stayed. After the responses were filed but before a hearing was filed and before a motion, a Rule 56D motion could be filed. So the case was, after the materials were submitted, the case was stayed for two and a half years during the pendency of the bankruptcy. Then after the stay was lifted, we did file a motion to be allowed to take those depositions. The court denied the motion based on the rationale that any depositions... A Rule 56D motion? I don't know if it was a rule. It was a motion to be allowed to take the depositions. I understand, but do you understand how... I don't know. Do you understand that's what should have been filed? I understand. That's the whole point of it. You're saying to the district court, don't rule. We need these depositions. It's not fair to rule on the motion for summary judgment until we have this evidence. I understand, Your Honor. I think that the response had a statement in it that requested that we be allowed to take the depositions, but a formal Rule 56D motion was not filed. But you're not even appealing that now. We're not. We're appealing the district court's... Because the way the district court looked at it, he didn't think that the depositions were important. He looked at the evidence, the fingerprint evidence, and ruled as a matter of law that it wasn't materially exculpatory. Well, but did you say to the district court in any way, shape, or fashion, without these depositions, we're not going to have any evidence that the prosecutor knew of this information? No. I think that the argument in the lower court was that we're 40 years out from when these events took place. We're not 40 years out from when the argument should have been made to the district court. That's correct, Your Honor. But I think that just as a matter of practicalities, it's been very difficult to track down the information and track down what the pieces are. No, but the law doesn't... I don't know of any legal doctrine that says you don't have to prove something because of the passage of time. I mean, the passage of time may have to make it difficult to prove something, but it doesn't lessen the evidentiary obligations. I agree, Your Honor, except that I think that there is evidence in the record that establishes our quantum of proof, because we have the deposition testimony of my client saying that he did not... no mention of this fingerprint evidence was ever brought to him. And I understand that there are intricacies that his client may have... I mean, his counsel at the time may have had conversations with the prosecution, et cetera. However, this case may have been a matter, of course, for the judge. It may have been happening as a matter, of course, for the attorneys involved. But for my client, he was on trial for a crime he didn't commit. What are you talking about now? It might have been what? I'm sorry? I don't understand. I'm saying that my client was very committed to paying attention to what was going on in the case. He was... he wanted to know... Okay, but counsel, this is the problem, at least for me, that I'm having. Personally, I think it was material, and I think it was exculpatory. But... And I understand, and I accept that your client says that they weren't told by anybody. Okay, so... But you're suing the police officers. So the question is there, how do we... from what do we infer that the police did not give it to the prosecutor? So there's three pieces. First, I've already talked about my client's testimony. Second is... No, but your client's testimony doesn't do it because we don't know whether it's the prosecutor or the police. Did the police not give it to the prosecutor, or did the prosecutor not give it to the defendant? I think then you have two other pieces, too. The second is that there is no mention in the prosecution file or any of the criminal documents that... any mention of this fingerprint evidence. Okay, so that's significant. But where does that... And I think you argued that, but where does that come from? Who looked at the prosecutor's file? The Innocence Project did when they did the motion to dismiss. Was it admitted into evidence in connection with the summary judgment motion? It was not, Your Honor. Okay, but let's go back. You're saying that the Innocence Project had the file and it wasn't in there. Now, where do we find that in the record? I don't think it's in the record, Your Honor. And did you bring that to the attention of the district judge when you were opposing this motion? I think that the trial attorney didn't, and the reason is because the... They were talking about the facts as if they were established. They took the dismissal from the dismissal of the conviction and the facts that were established through the Innocence Project and just accepted them for the purposes of the motion. So the district court, in his opinion, cited many of the facts that I'm referring to. Okay, so the fact that... As I understand it, the Innocence Project got the fingerprints somehow. Does the record show how they got them? Yes. So the Innocence Project got involved in two ways. First, Mr. Carter has been very adamant in proving his innocence since he's been convicted, and so he reached out to the Innocence Project, the Thomas Cooley Innocence Project. The Innocence Project, in turn, reached out to the Detroit Police Department and asked that if there was any DNA evidence, that it be retested. The DPD said that their DNA evidence from the case had been destroyed, but that there was this handrail that had been kept in evidence and that they would run the test for any fingerprints on the handrail. Now, this is the second part, the third part, that I haven't gotten to yet, and that's the notation in the 2009 re-inspection of the handrail. At that time, when the prints were rerun again, the technician running the report stated, and for the first time disclosed, that the prints had been run initially back in 1974 and that they had been a mismatch for Mr. Carter. This was the first time that it was anywhere in the public records or anywhere in writing that the prints had been run initially and that they had not been a match. Okay, so are we to, and what about that supports the inference that that information was not given to the prosecutor? Because it's not in any of the files. That's not in evidence, that's what you're telling us. But that's not, for purposes of this argument, that's not helpful to you. Things have to be in evidence for us to consider them. You didn't submit an affidavit of somebody from the Innocence Project? No, Your Honor, we did not. And did your client claim to have looked at any of the files with his attorney at the time? He claimed to have been involved. I mean, I don't think he was looking through all the pleadings and things, but he was involved with his defense and maintained his innocence and was involved in creating the story that would be presented. And then, I'm sorry, so you referred back to the stay. So you had a discovery period, right? And how long was it in effect before the stay was imposed? I know that the stay was imposed after discovery had closed. The stay was after discovery had closed. Yes, because So the stay had nothing to do with not taking depositions. No, but, I mean, I think it's important to add that we had been in discussions with defense counsel to take the depositions and had an informal agreement that the depositions would be taken when the stay was imposed. So you had the agreement, the stay is imposed, the stay is lifted, and then when you asked the court, so at that point discovery had closed, and then you asked the court to please let us take the depositions that we've already agreed to take? Yes, Your Honor. And the court said no. And the court said no for reasons of futility. Your time is up. Okay. You'll have your rebuttal. If you reserve some, I don't think I'll write it down. Good morning. May it please the court, my name is Linda Fagans, appearing on behalf of the city of Detroit. Our position is that the plaintiff has failed to establish in the constitutional sense a Brady claim for three reasons. The first one is that he's failed to prove that this city, the state, the government suppressed this evidence. Number two, that the handprint and the palm print constitute exculpatory information. And thirdly, clearly, that even if you agree that it's exculpatory, the plaintiff has failed to establish in a constitutional sense that it was material, that even if the defendant had known this, that it would have changed the outcome. This is a non-jury bench trial decision of the judge here. First of all, addressing the issue, there's no evidence in the record anywhere that the police officers who suppressed this information. There's never been any. First of all, the question is answered. Nothing was submitted. The police officers were never deposed. Prosecutor was never deposed. There's nothing. All this is based on speculation. It has to be pro-admissible evidence. Do you agree with the chronology that discovery was open, they were asking for depths, and I understand that's correct, and then do you agree that there was some agreement to produce these? No, I've never. I'm surprised. That's the first time I've ever heard this. Were you involved throughout? I'm just the appellate attorney, but I did talk to the trial attorney in this case, and I'm looking at what the record showed, and when I was looking at the record, it never showed, number one, that there was any type of agreement, and plaintiff, in this particular case, never appealed, I must say, the determination by the judge that he denied her motion to reopen the discovery case. Discovery, when the motion was filed, discovery had been closed. Plaintiff didn't come and ask for any type of motion. It was the first time, perhaps, was when the motion for summary disposition was filed. There has never been a motion to compel, no motion to compel discovery. After the stay, or was it before the stay? It was before the stay as far as I'm concerned. Before the stay, I looked at the motion to reopen. The motion reopened, according to this document, number four, not four, 54. The motion reopened, and I really don't remember that, but I know that when it arose and looking at the judge's decision, stated that plaintiff had neglected and did not show good cause for reopening. Number one, never filed a motion to compel, never brought anything, and he emphasized it was the duty of the plaintiff to take active action. This is apropos of nothing, but I'm just curious. I know the city of Detroit doesn't have a lot of money, but I take it it doesn't have a fund for when it negligently, as opposed to violating the Constitution, but negligently imprisons people. So you have someone who's been convicted, kept in jail for 10 years, 35 years, whatever it is. Do they have a fund where they say, you know, we're really sorry, and we're not going to pay you everything you want, but it doesn't have that. No, not that I'm aware of. But again, addressing the... Well, is there, I mean, this was a state prosecution. I mean, the police officers may have been involved, but it wasn't the city of Detroit ultimately who imprisoned them. Is there something like a victim compensation? I think the state has that, Your Honor. Has anything been given to Mr. Carter? Not to my, I don't know anything about whether he's gotten money or not, so I can't address that issue of whether he's applied for it. So in terms of evidence stating that the police officers suppressed any evidence or that they did not discuss this until the prosecution, as you're aware, the prosecutor is ultimately the one that decides what it tells the defense counsel. It's the one that determines the trial strategy and so forth, the police officers. Can we infer, because, I mean, certainly it was clear under Brady that the prosecutor had an obligation to disclose, and it wasn't disclosed. Can we make any, and the prosecutor's an officer of the court, can we make any presumption that if the prosecutor had had it, he would have disclosed it to the defendant? Your Honor, in terms of what the prosecutor would have done, arguably, I think that's speculation. I can't say what the prosecutor would have done, and I don't know about you seeing that had he had it. I don't think you can make those inferences. If he had it, he would have done that in this case and then hold the police officers accountable in this particular case. The situation of the police officers is not legally identical to that of the prosecutor, correct? Yes. At least in 74-75. In 1974, you are correct, Your Honor. They had no duty, of course, to turn anything over to the defendant or defense counsel. And just in 2009, establishing, yes, they do have a duty, but the duty is still to make sure they turn it over to the prosecutor. The point is, the duty was established years after. Years after, thank you, Your Honor. That is the point, that duty was. But what is clear, there's no admissible probe of evidence to establish that we suppressed anything here. The innocence project was never admitted, so I've never seen the file, and it's not in any of our records. And it was never raised or submitted to the district court. None of this evidence is just that, oh, the city, it wasn't in the record. That is based on speculation. We don't know what happened in this particular case. And you can't rule that it was suppressed based on speculation. Number two, this fingerprint was not exculpatory. I think these next two arguments are a little harder for what it's worth. Yeah, they are. Your Honor, but not when you look at the one thing that when I've been reading over the opinions, and as you know, you have to look at the, not look at just the evidence itself, but all what was available collectively and the entire of the case. I was just looking over your decision. Judge Gibbons and Judge White participated in the escape to me case. Boy, I just had it on the top of my head. It's unlikely. We'll remember if you can't come up with a name. But I guess the case is, I had it. Well, what are the facts? But the point of the case was is that you say that you have to go collectively and look at this whole case. So what do we have in this case? Plaintiff wants to say that what was so unique about this that would have changed the judge, remember this was a non-jury case, a position, was the fact that there was a fingerprint found on the bottom of the, on one of the handrails. In this particular case here, if you look at, which was admissible in the investigation report, there were numerous fingerprints. A lot of them had poor results. If you look in the record in the document 19, it said it was poor results, poor results, couldn't determine. Are you talking about the handrail or the footrail? The handrail, period. I think the footrail is the issue. I think it's the footrail. Yeah, the footrail. But they, and they didn't particularly identify it, but they said the whole particular thing was numerous. And that's what the issue is. And this is the police officer stating this. I thought the footrail had just the palm print. Palm print, yes, but I'm talking about the stall, period. And so the point was. Just, you can make the argument easier for you. I understand why lawyers do that. I used to be in your position. But it's not that helpful to us if you're not talking about the hard thing. The difficult part is the footrail. The footrail. That's the hardest issue. But let me say something about the footrail. If you look at the plaintiff's statement, this is what the police officer said. But if you look at the plaintiff's statement, because I was worried about that question myself. So I went back and looked to see what the plaintiff said. The plaintiff never mentioned anything about this particular assault. This suspect touching anything. She was the one that was doing all the touching of the handrails. How did he get in the stall? How did he get in the stall? Did she tell us about that? Yes, she does. She said that she sat on the couch. He came up behind her, around the neck, had a knife, and he put her and he took her to the stall, locked the door, made her turn around. It was very gruesome. So there was arguably no reason for him to have been touching the footrail. No. Right. That's not true because she says that the first thing he did is that he was, if I'm not mistaken, he was down on his knees. I don't see that. And if you read it again, Your Honor, I beg to differ with you. I don't see her saying that. Tell us what you're referring to. What should we read to know whether that's true? Her statement as to what occurred. Okay. So just read her statement. Her statement, what occurred. Now, whether it's a police officer, what was in his mind or whatever, why he said that, it doesn't know. So it doesn't. So when you look at the context of this case, you have what we're looking at from 1974, Your Honor. We only found out what happened with that rail there in later years. I don't think it's fair to have it advantage you that he was in prison for 35 years. Your Honor. We're supposed to construe that in your favor. So don't, I wouldn't go that route. Your Honor, I'm not, I understand the plight and the horrible plight. But the issue here is whether or not the evidence was material. Whether or not that this evidence, even given the fact that the handrail and looking at the whole context based on the case. Okay. The first thing he does is he's using his tongue, I assume, on her rectum. Right. So he's obviously in a position where he's able to do that. Your Honor, you're speculating. With all due respect, that's speculation. That's not in the record. It might be, even if he's, I don't know how he did it. I don't know how he did it. You know what, counsel? Yes. It's very interesting that you say that. Because there's no doubt, right, that if the right person had been prosecuted with his fingerprint in that location, the prosecutor would be arguing, look at the location of this fingerprint. Look at her testimony. And nobody would be objecting. And the jury would find it very convincing. Your Honor, yes. But we're looking at here in the time that we're trying to find police officers liable and arguing that they denied point of this procedural due process by failing to mention that allegedly, which there's no evidence that they did, because the point is that we have to prove that they did fail to tell the prosecutor and that's not here in this particular case. In this particular case, what my position is in the case of saying the proposition stands for that when there's many in a public stall where there's many handprints and so forth, that all it proves in this particular case is that a neutral point, that we don't have any particular evidence that plaintiff was there, but it doesn't mean he wasn't there. You know what? I think, for me at least, it helps to concede that this has relevance. But to know that that's not the same as materiality. Yes, Your Honor. In a Brady sense. That's right. I agree. And I think that, I mean, I think that that might be, I think I might just give up the fact and concede it's relevant and go to whether it's material in a Brady sense. Wow. I was trying to get there. I guess I, really I didn't even want to get stuff out of this laboratory. Let's go there. I mean, yes, you have two eyewitnesses. All they do is place them in the building. But you have eyewitness testimony that has never been controverted. You also had a photo, a lineup, that has never been said that it was improper when plaintiff went to the Michigan Court of Appeals. But if you had a rail located in that position, a position that would be rarely touched, rarely grabbed, only under certain circumstances, like somebody pulling himself up from the ground, and that fingerprint was clear so that it was likely recent and it wasn't this person's, I think a lawyer could do a very good job using that to create a reasonable doubt. But, Your Honor, you have to understand, in 1974, no one knew what was on that rail. And all we worked with What do you mean no one knew what was on the rail? No one knew. They emphasized, all he emphasized in that report was what it looked like and could have been someone put off the floor. There wasn't no one, as far as we know, in terms of that, we do know that there was no match of Carter being there. But based on the evidence, when we look at the whole context of the case, look at the evidence that you did have eyewitness testimony, then look at the fact that you did have two witnesses who placed him there, look at the fact that this eyewitness testimony, which has been reliable, nothing has been done to say anything to question her ability to see, to even question or bring question to this eyewitness testimony, that's what you have there. In this particular case, they established that the defendant was there and therefore is not material. So even if the judge had known about the fact, or the defense, that there was no match, the judge, in that particular case, could have said in light of the eyewitness testimony and the fact that there was no match, a lot of times the fact that something is not a match, this shows that, especially in a public bathroom, that it doesn't mean that the defendant was not there in the case. Thank you, Your Honor. Thank you. Is there a state victim's compensation fund? There is not, Your Honor. The legislature in Michigan has been working on a compensation fund for wrongfully convicted individuals. I think something proposed last year was $10,000 for every year that the victim, I mean that he had been imprisoned wrongfully, but they haven't been able to pass that, and it's not law yet. He has no recourse. And I know this doesn't, it's more context than anything else, but my client's in his 60s. He has very little work experience behind him because he's been in prison for 30 years. You know, and given all of that, it's a real shame if this case is dismissed because counsel did not establish the very simple fact of whether it was the police or the prosecutor. It's just adding insult to injury. But what is in the record that we can grab on to say it's enough? I have the three things that I cited. I think that the report that was run in 2009 by the DPD is very probative and important because that's the first time that anybody in any of the records, in any of the written records, it came out that the fingerprints existed in 1974, that they had been run for a match, and that they did not match Mr. Carter. The only reason that we know that the fingerprints had been run and that they did not match is because the technician in 2009 made note of that in his report. And that's what we've attached, that's what we've relied upon throughout the whole litigation because it's the first time that it ever came up that these fingerprints had been run and had not matched. And given the location of the fingerprints and the nature of the assault, the only way that those fingerprints could have gotten on the bottom foot rail of the bathroom is by somebody getting up off the floor. And the victim in her statement stated that she'd been orally abused by the assailant before he sodomized her. And that is the crux of our case, Your Honor. Are there any other questions? Thank you. We appreciate the argument both of you have given, and we'll consider the case carefully.